| | |
|---|---|
| STEVEN H. GREENFELD, TRUSTEE FOR THE BANKRUPTCY ESTATE OF HEALTH MANAGEMENT RESOURCES, INC.<br>7910 Woodmont Avenue<br>Suite 760<br>Bethesda, Maryland 20814,<br><br>       Plaintiff,<br>v.<br><br>WEINSTOCK, FRIEDMAN & FRIEDMAN, P.A.<br>Second Floor<br>4 Reservoir Circle<br>Baltimore, Maryland 21208-7301<br><br>**Serve On**:<br>Edward J. Friedman, Esquire<br>WEINSTOCK, FRIEDMAN & FRIEDMAN, P.A.<br>Second Floor<br>4 Reservoir Circle<br>Baltimore, Maryland 21208-7301<br><br>And<br><br>PRE-PAID LEGAL SERVICES, INC.<br>One Pre-Paid Way<br>Ada, Oklahoma 74820<br><br>**Serve On**:<br>Keri Prince, General Counsel<br>Pre-paid Legal Services, Inc.<br>One Pre-Paid Way<br>Ada, Oklahoma 74820,<br><br>       Defendants | IN THE<br><br>CIRCUIT COURT FOR<br><br>PRINCE GEORGE'S COUNTY<br><br><br><br>Case No.: |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, STEVEN H. GREENFELD, TRUSTEE FOR THE BANKRUPTCY ESTATE OF HEALTH MANAGEMENT RESOURCES, INC., by and through his

1

attorneys, Adam M. Freiman and Sirody, Freiman and Feldman, P.C., A. Dwight Pettit, Mitchell D. Treger and A. Dwight Pettit, P.A., hereby sues the Defendants, WEINSTOCK, FRIEDMAN & FRIEDMAN, P.A., and PRE-PAID LEGAL SERVICES, INC. and for reasons states as follows:

1. That the Plaintiff STEVEN H. GREENFELD is the Trustee for the Bankruptcy Estate of HEALTH MANAGEMENT RESOURCES, INC. ("HMR") which, at all times relevant hereto was a corporation incorporated in the State of Maryland with its corporate headquarters located in Prince George's County. HMR, as referred to herein, includes HMR's agents, employees and officers.

2. That at all times relevant hereto, Defendant WEINSTOCK, FRIEDMAN & FRIEDMAN, P.A. ("Weinstock") was and is a law firm incorporated in the State of Maryland with headquarters at 4 Reservoir Circle in Pikesville, Maryland.

3. That at all times relevant hereto, Defendant PRE-PAID LEGAL SERVICES, INC. ("PPLS"), was and is a corporation doing and conducting regular business in the State of Maryland with corporate headquarters located at One Pre-Paid Way in Ada, Oklahoma. Upon information, belief and business entity search with the Maryland State Department of Assessments and Taxation, the Defendant PPLS does not have a resident agent in Maryland.

4. That both Defendants Weinstock and PPLS as referred to in this Complaint, includes the respective Defendant association and corporation and their agents, servants and employees, including, without limitation, Mr. Edward J. Friedman, Mr. Bruce Richardson and Mr. Leonard Tober, attorneys and PPLS providers with Defendant Weinstock.

5.   That at all times relevant hereto, the professional misconduct, negligence, fraud and egregious mishandling of HMR's legal affairs, as set forth below, occurred in the Federal Bankruptcy Court in Prince George's County, Maryland. That all times described herein, both Defendants carried on regular business and were doing business in Prince George's County and in the State of Maryland.

6.   At all times relevant hereto, Defendant PPLS marketed and sold pre-paid legal services to HMR through its chief executive officer and other persons in Maryland. That Defendant PPLS claims, asserts and holds out to the general public that Defendant Weinstock, along with all of PPLS's other provider firms, are "carefully screened and selected" to provide legal services to PPLS members. At all times relevant hereto, Defendant Weinstock's contact with HMR was facilitated exclusively by and through Defendant PPLS.

7.   That Defendant Weinstock claims, asserts and holds out to the general public that "As a Pre-Paid Legal Services, Inc. Provider Firm, we are required to meet certain standards set by our home office in Ada, Oklahoma. We send reports daily and our performance is monitored regularly. Pre-Paid Legal Services will not tolerate anything less than excellence."

8.   In March, 2004, HMR, through its Chief Corporate Officer, Rudy Coleman, subscribed to and became a paying member of PPLS. HMR offered the services of PPLS to employees as well as utilizing PPLS services on behalf of the corporation. HMR was assigned by PPLS to Defendant Weinstock, one of PPLS's providers. Defendants Weinstock and Defendant PPLS facilitated the provision of Weinstock's and PPLS's

services to HMR through Weinstock's associates Mr. Richardson, Mr. Tober and/or others.

9. Through Defendant PPLS, HMR employed the services of Defendant Weinstock, who held itself out to the public as knowledgeable and experienced in the handling of corporate matters, to represent HMR in connection with negotiating settlement to outstanding accounts payable and to develop an appropriate method of collection of accounts receivable. In October, 2004, Defendant Weinstock convinced HMR that a bankruptcy filing for corporate reorganization was the appropriate method of solving both issues and upon the advice of Defendant Weinstock, HMR agreed to request bankruptcy protection under Chapter 11 of the Bankruptcy Code. Defendant Weinstock was compensated for such services directly by HMR and through Defendant PPLS.

10. In the course of Defendant Weinstock's representation of HMR, HMR was led to believe by Weinstock that a bankruptcy case for reorganization had been filed in December, 2004. In fact, Defendant Weinstock had created a fictitious case number which was used to convince HMR that an actual Petition for reorganization had been filed when it had not. Defendant Weinstock then created forged Orders purportedly from the Bankruptcy Court to attempt to obtain "post-petition" factoring on behalf of HMR.

11. In February, 2005, partners of Defendant Weinstock received notice that their firm's actions were being investigated by the United States Department of Justice and the Federal Bureau of Investigation.

12. Thereafter Defendant Weinstock negligently, recklessly, carelessly and intentionally failed to disclose to HMR their actions as described in Paragraph Ten above and made every effort to obscure and conceal from HMR the effect that Defendant

Weinstock's conduct had upon the HMR's business. Defendant Weinstock then filed a real Chapter 11 Petition for reorganization and continued to negligently and intentionally provide so-called advice, counsel and representation to HMR notwithstanding the open and obvious conflict of interest that had developed between Weinstock's interests and HMR's interests.

13. That Defendant Weinstock compounded its negligent acts by negligently, carelessly and intentionally advising HMR to convert its Chapter 11 case into a case under Chapter 7 of the Bankruptcy Code a mere month after the filing of the non-fictional Chapter 11 Petition. This conversion of the bankruptcy was not, in fact, authorized or consented to by HMR because Defendant Weinstock had: (a) failed to inform and advise HMR of the circumstances necessitating conversion; (b) failed to inform and advise HMR of the false Chapter 11 filing; (c) failed to inform and advise HMR of the conflict of interest that had developed between HMR's interests and Defendant Weinstock's interests; and (d) failed to inform and advise HMR of the impact that the delayed filing had upon HMR's business. As a result of Defendant Weinstock's conduct, HMR was forced to abandon all business operations, including government contracts valued in the multiple millions of dollars, and liquidate.

14. Upon information and belief, throughout the course of events set forth above, Defendant Weinstock sent reports to Defendant PPLS and Defendant PPLS monitored Defendant Weinstock's performance regularly with respect to Weinstock's representation of HMR and HMR personnel.

## COUNT I - - - PROFESSIONAL MALPRACTICE/ NEGLIGENCE (Weinstock and PPLS)

15. Plaintiff reincorporates, as if fully stated herein, all of the allegations set forth in Paragraphs One through Fourteen (14) above.

16. Defendant Weinstock owed HMR a reasonable duty to exercise that degree of care and diligence in the filing and handling HMR's bankruptcy case as used by other attorneys engaged in the practice of law. This reasonable duty included:

(a) Acting in HMR's best interests rather than Defendant Weinstock's self interests;

(b) Advising HMR as to the obvious conflict of interest that had arisen in February, 2005;

(c) Withdrawing from HMR's case in view of the obvious conflict of interest that had developed by way of the actions of Weinstock's representation;

(d) Referring the matter to competent and non-conflicted counsel who could maintain and follow through with HMR's Petition for reorganization; and/or

(e) Acting in HMR's best interests by not filing a Chapter 7 Petition for liquidation when a timely and properly filed Chapter 11 Petition was an obviously viable way for HMR to proceed with its business and where HMR had not, in fact, authorized or consented to conversion because HMR was not fully advised of the circumstances leading up to conversion.

17. By failing to exercise that reasonable degree of care and diligence as exercised by other attorneys engaged in the practice of law, Defendant Weinstock breached the duty that it owed to HMR in violation of the standards reasonably to be expected of a reasonably competent practitioner in the legal profession, and in these circumstances, and

by its acts and omissions as alleged herein, negligently failed to render proper legal representation to HMR.

18.     By failing to disclose to HMR its actions and the actions of its attorneys and by making efforts to obscure and conceal from HMR the effect that its conduct had upon the HMR's business, Defendant Weinstock breached the duty that it owed to HMR in violation of the standards reasonably to be expected of a reasonably competent practitioner in the legal profession, and in these circumstances, and by its acts and omissions as alleged herein, negligently failed to render proper legal representation to HMR.

19.     By continuing to provide so-called advice, counsel and representation to HMR notwithstanding the open and obvious conflict of interest that had developed, Defendant Weinstock breached the duty that it owed to HMR in violation of the standards reasonably to be expected of a reasonably competent practitioner in the legal profession, and in these circumstances, and by its acts and omissions as alleged herein, negligently failed to render proper legal representation to HMR.

20.     That by advising HMR to convert its Chapter 11 case into a case under Chapter 7 of the Bankruptcy Code a mere month after the filing of the original Petition and by converting the case from reorganization to liquidation without informed authorization or consent, and/or in other ways that may be discovered throughout the course of this litigation, Defendant Weinstock breached the duty that it owed to HMR in violation of the standards reasonably to be expected of a reasonably competent practitioner in the legal profession, and in these circumstances, and by its acts and omissions as alleged herein, negligently failed to render proper legal representation to HMR.

21. That, but for Defendant Weinstock's negligent, reckless and careless breaches of duty, as described above, HMR would have remained in business under a plan of reorganization and would not have had to liquidate.

22. As a direct and proximate result of Defendant Weinstock's negligence, HMR was forced to abandon all business operations, including government contracts valued in the multiple millions of dollars, and liquidate.

23. That throughout the course of events set forth above, Defendant Weinstock sent reports to Defendant PPLS and Defendant PPLS monitored Defendant Weinstock's performance regularly with respect to all PPLS members including HMR.

24. That Defendant PPLS had a duty to keep itself reasonably apprised of the activities of its provider firms with respect to its paying members including specifically the activities of Defendant Weinstock with respect to HMR and its representatives.

25. That in view of Defendant Weinstock's practice of regular reporting to PPLS and PPLS's oversight and monitoring of Weinstock, Defendant PPLS knew or should have known of Weinstock's mishandling of HMR's case and malpractice.

26. That Defendant PPLS had a duty to assign HMR and its representatives to a different PPLS provider in view of its knowledge of Defendant Weinstock's actions.

27. As a legal services provider in the State of Maryland, Defendant PPLS owed HMR and its representatives a reasonable duty to exercise that degree of care and diligence as used by other legal service providers engaged in the practice of law and the provision of legal services.

28. Defendant PPLS breached the aforesaid duties, by negligently, carelessly and unreasonably: (a) failing to keep itself reasonably apprised of the activities of its provider

firms with respect to its paying members including specifically the activities of Defendant Weinstock with respect to HMR and its representatives; (b) failing to assign HMR and its representatives to a different PPLS provider where PPLS knew or should have known of Weinstock's mishandling of HMR's case and malpractice; (c) failing to exercise that degree of care and diligence as used by other legal service providers engaged in the practice of law and the provision of legal services; and/or (d) in other respects that might be discovered during the course of this litigation and/or at trial.

29. As a direct and proximate result of Defendant PPLS's negligence, HMR was forced to abandon all business operations, including government contracts valued in the multiple millions of dollars, and liquidate.

WHEREFORE, Plaintiff STEVEN H. GREENFELD, TRUSTEE FOR THE BANKRUPTCY ESTATE OF HEALTH MANAGEMENT RESOURCES, INC. demands judgment against the Defendants, WEINSTOCK, FRIEDMAN & FRIEDMAN, P.C. and PRE-PAID LEGAL SERVICES, INC., jointly and severally, in the sum of One Hundred Million Dollars ($100,000,000.00) and any such other and further relief to which Plaintiff is entitled.

### COUNT II - - - FRAUD (Weinstock)

30. Plaintiff reincorporates, as if fully stated herein, all of the allegations set forth in Paragraphs One through Twenty Nine (29) above.

31. Defendant Weinstock, for its own benefit, defrauded HMR by making intentional misrepresentations of material fact i.e. that they had filed a bankruptcy petition when they had not and that HMR needed to liquidate when it did not; That these misrepresentations

were made for the purpose of deceiving HMR, and were reasonably relied upon by HMR and that HMR has suffered damages as a result.

WHEREFORE, Plaintiff STEVEN H. GREENFELD, TRUSTEE FOR THE BANKRUPTCY ESTATE OF HEALTH MANAGEMENT RESOURCES, INC. demands judgment against the Defendant, WEINSTOCK, FRIEDMAN & FRIEDMAN, P.C. in the sum of One Hundred Million Dollars ($100,000,000.00) compensatory damages and One Hundred Million Dollars ($100,000,000.00) punitive damages and any such other and further relief to which Plaintiff is entitled.

## COUNT III -- BREACH OF FIDUCIARY DUTY (Weinstock)

32. Plaintiff reincorporates, as if fully stated herein, all of the allegations set forth in Paragraphs One through Thirty One (31) above.

33. That Defendant Weinstock had a fiduciary duty to HMR and had gained HMR's confidence and purported to act and give advice for the benefit of HMR and with HMR's interests in mind rather than Defendant's self-interests.

34. That Defendant Weinstock breached its fiduciary duty to HMR by failing to disclose to HMR its actions and the actions of its attorneys and by making efforts to obscure and conceal from HMR the effect that its conduct had upon the HMR's business.

35. That Defendant Weinstock breached its fiduciary duty to HMR by continuing to provide so-called advice, counsel and representation to HMR notwithstanding the open and obvious conflict of interest that had developed between HMR's interests and Defendant Weinstock's interests.

36. That Defendant Weinstock breached its fiduciary duty to HMR by advising HMR to convert its Chapter 11 case into a case under Chapter 7 of the Bankruptcy Code a mere

month after the filing of the original Petition and by converting the case from reorganization to liquidation without informed authorization or consent.

37.  That HMR was harmed by Defendant Weinstock's breach of its fiduciary duty to HMR and HMR was forced to abandon all business operations, including government contracts valued in the multiple millions of dollars, and liquidate.

WHEREFORE, Plaintiff STEVEN H. GREENFELD, TRUSTEE FOR THE BANKRUPTCY ESTATE OF HEALTH MANAGEMENT RESOURCES, INC. demands judgment against the Defendant, WEINSTOCK, FRIEDMAN & FRIEDMAN, P.C. in the sum of One Hundred Million Dollars ($100,000,000.00) compensatory damages and One Hundred Million Dollars ($100,000,000.00) punitive damages and any such other and further relief to which Plaintiff is entitled.

Respectfully submitted,

Date:

/s/
_____
ADAM M. FREIMAN
Sirody, Freiman & Feldman, P.C.
1777 Reisterstown Road, Suite 360
Baltimore, Maryland 21208
(410) 415-0445

/s/
_____
A. DWIGHT PETTIT
Mitchell D. Treger
A. Dwight Pettit, P.A.
3606 Liberty Heights Avenue
Baltimore, MD 21215
(410) 542-5400

Attorneys for Plaintiff